## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

* * * * *

KEVIN COLLINS, as Personal Representative of
THE ESTATE OF MARILYN COLLINS, for itself
and all those similarly situated,

           Plaintiff,

v.

OAKLAND COUNTY, a Government Unit;
ROBERT WITTENBERG in his individual and
official capacity; ANDREW MEISNER, in his
individual capacity; WAYNE COUNTY, a
Government Unit; ERIC SABREE, in his individual
and official capacity,

           Defendants.

_____/

Case No. 22-cv-_____

Hon. _____

**COMPLAINT**

**(JURY DEMAND)**

**\*\* CLASS ACTION \*\***

## COMPLAINT

Plaintiff The Estate of Marilyn Collins, both individually and on behalf of a class similarly situated individuals and entities, by and through counsel, for his Complaint states as follows:

### PARTIES

1.    Kevin Collins ("Collins") is a resident of Macomb County, Michigan. Collins is the Personal Representative[1] of the Estate of Marilyn Collins who, prior to her death, owned property in Oakland County. "Plaintiff", as used herein, shall refer to the Estate of Marilyn Collins, and where the context requires, Marilyn Collins.

_____

[1] The Oakland County Probate Court appointed Collins as Personal Representative on July 13, 2022. *See* **Exhibit 1**.

2.     Defendants Counties of Oakland and Wayne are governmental units in the State of Michigan that govern their individual counties (individually each a "County" and collectively, "Counties").

3.     The individually listed Defendants ("Treasurers") are or were public officials serving as county treasurers for their respective county and are sued in their individual and official capacities.

4.     Prior to the foreclosure referenced below, Plaintiff owned real property in Oakland County commonly described as 26037 Delton St, Madison Heights, MI 48071 ("Collins Property").

5.     Each class member similarly owned property in Oakland and/or Wayne counties which were foreclosed upon for unpaid *ad valorem* taxes (such properties are hereinafter referred to together with the Collins Property as the "Subject Properties").

## JURISDICTION AND VENUE

6.     This civil action seeking, among other requested relief, recognition of a constructive trust and unpaid "just compensation" against Defendants for violations of Article X, § 2 of the Michigan Constitution and the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.

7.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1343 (civil rights cases); and 28 U.S.C. § 1367 (supplemental state law claims).

8.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), since Defendants, individually and collectively, conduct or have conducted business in the Eastern District of Michigan and the Subject Properties are situated within the Eastern District of Michigan.

## TAX FORECLOSURES

9.      Prior to July 17, 2020, the collection of delinquent taxes was set out in the General Property Tax Act ("GPTA") at sections MCL 211.78 to MCL 79A.

10.     The GPTA allowed counties to voluntarily choose to act as the Foreclosing Governmental Unit ("FGU") in lieu of designating the State of Michigan (the "State") to serve as the FGU. *See* MCL § 211.78(3).

11.     If the Counties chose to be the FGU, the Defendants were permitted to seek foreclosure of real properties that had delinquent taxes due: "[A] foreclosing governmental unit may seek a judgment of foreclosure under [MCL § 211.78k] if the property is not redeemed as provided under this act . . ." MCL § 211.78(7)(b).

12.     The Counties and County Treasurers made an affirmative, voluntary, and discretionary decision based on their own policy that resulted in the Counties being the FGU pursuant to the GPTA under MCL § 211.78.

13.     Defendants foreclosed on Plaintiff's and class members' interest in the Subject Properties pursuant to the GPTA as a result of delinquent taxes, unpaid assessments, fees, penalties, and/or interest (individually, "Tax Foreclosure" and collectively, "Tax Foreclosures").

14.     Following the Tax Foreclosures, the Counties retained ownership or directed, implemented, or gave instruction that the Subject Properties be sold at auction to third parties, or that the Subject Properties be conveyed to the State of Michigan, a county, a township, a village, a city, a land bank, or other governmental entity ("Tax Sale or Tax Sales").

15.     Upon information and belief, the Counties received proceeds from the Tax Sales that exceed the amount of unpaid delinquent taxes, interest, penalties, and fees ("Surplus Proceeds").

16.     Upon information and belief, the County invested the Surplus Proceeds deriving income (the Surplus Proceeds together with the income derived therefrom shall be referred to as "Accrued Surplus Proceeds").

### *RAFAELI* DECLARES PORTIONS OF THE GENERAL PROPERTY TAX ACT UNCONSTITUTIONAL AND MANDATES THE RETURN OF SURPLUS PROCEEDS

17.     On July 17, 2020, the Michigan Supreme Court issued its opinion in *Rafaeli, LLC v Oakland County*, 505 Mich 429; 952 N.W.2d 435 (2020) ("*Rafaeli*"), in which the Court held that the Surplus Proceeds foreclosing governmental units (here the Counties) obtained from Tax Sales are required to be returned to Plaintiff and class members. The *Rafaeli* opinion is attached hereto as **Exhibit 2**.

18.     Before *Rafaeli*, Plaintiff and class members were statutorily disabled from filing claims for the return of Surplus Proceeds because the GPTA expressly required the County to retain the Surplus Proceeds pursuant to MCL § 211.783(8)(h) and MCL § 211.78n.

19.     The *Rafaeli* court held that Plaintiff and class members have a common law right to the Surplus Proceeds and held the provisions of the GPTA which required the County to retain Surplus Proceeds violated Article X, § 2 of the Michigan Constitution. Specifically, the court opined that:

> To the extent the GPTA permits defendants to retain these surplus proceeds and transfer them into the county general fund, the GPTA is unconstitutional as applied to former property owners whose properties were sold at a tax-foreclosure sale for more than the amount owed in unpaid taxes, interest, penalties, and fees related to the forfeiture, foreclosure, and sale of their properties.
>
> *Rafaeli*, 202 Mich. At 474-75; 954 N.W.2d at 461.

20.     The *Rafaeli* court's decision recognized Plaintiff's and class members' vested property interest in the Surplus Proceeds generated from the tax foreclosure and sale of their

properties as being protected by the Takings Clause of Michigan's Constitution. *Rafaeli*, 505 Mich. at 456.

21.     *Rafaeli* signified the return to the fundamental constitutional mandate "that the government shall not collect more taxes than are owed, nor shall it take more property than is necessary to serve the public . . ." *Rafaeli*, 505 Mich. at 468.

22.     Pursuant to the Michigan Supreme Court's decision in *Rafaeli*, Plaintiff and class members are entitled to immediate recovery/return of the Surplus Proceeds the County currently holds in constructive trust for the benefit of Plaintiff and class members.

23.     Defendants have failed and/or refused to turn over the Surplus Proceeds to Plaintiff and class members.

**PLAINTIFF'S AND CLASS MEMBERS' PROPERTIES WERE FORECLOSED AND THE SURPLUS PROCEEDS WERE NOT RETUTNED TO THE RIGHTFUL OWNERS**

24.     Upon information and belief, at the time of the Tax Foreclosures of the Subject Properties, Plaintiff and class members owed the respective Counties small amounts of delinquent taxes and/or assessments, interest, penalties, and fees, reasonably related to the foreclosure and sale of the Subject Properties (hereinafter, "Tax Delinquency" or "Tax Delinquencies").

25.     Regarding the Collins Property:

    a.  In 2016, Oakland County, as FGU, seized Plaintiff's ownership interest in the Collins Property.

    b.  As of the date of Tax Sale, the Collins Property accrued a Tax Delinquency of approximately $8,232.99.

    c.  Oakland County conveyed the Collins Property on or about July 22, 2016 for $63,000.

d. Since July 17, 2020, Defendant Oakland County knew or should have known that Plaintiff had a vested property interest in the Surplus Proceeds generated from the Tax Sale of the Collins Property.

e. Defendants have failed and/or refused to turn over to Plaintiff the Surplus Proceeds in the amount of $54,767.01.

f. Defendants have also refused or otherwise failed to turn over to Plaintiff the Accrued Surplus Proceeds.

g. Plaintiff has or will suffer harm as a result of Oakland County's failure and/or refusal to turn over Plaintiff's Surplus Proceeds.

26. Regarding the class members' Subject Properties:

a. In 2016 and prior years, Defendants, as FGUs, seized the class members' ownership interest in their Subject Properties.

b. As of the date of Tax Sale, the class members' Subject Properties accrued a Tax Delinquency less than the value of the Subject Property.

c. In each instance, the respective FGUs conveyed the class members' Subject Property for more than the Tax Delinquency or conveyed the property without a sale.

d. Although each respective Defendant has actual or constructive knowledge that class members have a vested property interest in the Surplus Proceeds generated from the Tax Sale of each respective Subject Property, Defendants have failed and/or refused to return class members' Surplus Proceeds.

e.   Class members have or will suffer harm as a result of Defendants' failures and/or refusals to turn over class members' Surplus Proceeds.

27.   All Defendants have, in an identical fashion as outlined above, failed to return Surplus Proceeds to other similarly situated individuals in Oakland County and Wayne County.

28.   Defendants' continued retention of Plaintiff's and class members' Surplus Proceeds remains outside of the scope of activity authorized by the United States Constitution or the State Constitution, a statute, local charter or ordinance, or other law.

29.   After the issuance of *Rafaeli*, Defendants' conduct fell outside the "exercise of governmental function."

30.   The Counties' actions and/or inactions continue to be undertaken in willful and wonton disregard of Plaintiff's and class members' property rights.

31.   The Counties' retention of and/or failure to return Plaintiff's and class members' Surplus Proceeds is outside the scope of governmental immunity.

32.   The Defendants' continued illegal and unconscionable retention of Plaintiff's and class members' Surplus Proceeds, the Surplus Proceeds are and have been imbued with and subject to a constructive, involuntary, and/or *ex delicto* trust.

33.   Plaintiff and class members remain entitled to immediate return of the Surplus Proceeds from the Subject Properties.

34.   Defendants either wantonly or intentionally caused Plaintiff and class members harm when the Counties ignored, or otherwise disregarded, Plaintiff's and class members' rights guaranteed under the Michigan and United States Constitutions.

35.   In light of *Rafaeli*, Defendants retention of Plaintiff's and class members' Surplus Proceeds and subsequent failure and/or refusal to return the same is an unconstitutional taking in

violation of Article X, § 2 of Michigan's 1963 Constitution and the Fifth Amendment of the United States Constitution.

36.    Defendants did not initiate any condemnation action, process, or procedure for the taking of or compensation for Plaintiff's and class members' Surplus Proceeds.

37.    Defendants' retention of Plaintiff's and class members' Surplus Proceeds with full knowledge of the Michigan Supreme Court's decision in *Rafaeli* is a breach of Defendants' duty to uphold the both the Michigan and United States Constitutions which is the proximate and actual cause of Plaintiff's and class members' damages.

38.    The counties did not afford Plaintiff or class members any process, plan, or legal mechanism to seek or achieve turnover of the Surplus Proceeds Defendants received for the Subject Properties.

39.    Defendants' actions, as described herein, were undertaken pursuant to an official rule, statute, policy, and/or custom, thereby permitting Plaintiff's claims for liability against the County and others claiming immunity, as set forth in *Monell v New York City Dep't of Soc. Servs*, 436 U.S. 658; 98 S. Ct 2018 (1978) and *Carlton v Dep't of Corr.*, 215 Mich. App. 490; 546 N.W.2d 671 (1996).

## CLASS ALLEGATIONS

40.    This action is brought by Plaintiff pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), on behalf of the owners of real property in Oakland County and Wayne County, whose properties were foreclosed and sold in the year 2016 and prior years and whose Surplus Proceeds have not been returned or were otherwise subjected to the unconstitutional process and legislation that, absent a constructive trust, resulted in the taking conversion, and/or *ex delicto* withholding of their Surplus Proceeds.

8

41.     The proposed class consists of all owners of real property in Wayne and Oakland counties, whose real property, in the year 2016 and prior years, pursuant to the GPTA, was seized through a real property tax foreclosure action and disposed of through a Tax Sale for an amount in excess of the Property's Tax Delinquency and who did not receive compensation for the Surplus Proceeds generated in excess of the Tax Delinquency.

42.     This action and the proposed class exclude those who have received payment for Surplus Proceeds, those who have separately filed their own personal post-Tax Foreclosure legal actions in state of federal courts for payment, turnover, or return of Surplus Proceeds, or those who are members of any certified class in any other case asserting claims for the turnover/return of Surplus Proceeds or damages for failure to pay Surplus Proceeds.

43.     The number of persons who have been injured by the practices discussed herein is sufficiently numerous as to make class litigation the most practical method to secure redress for the injuries sustained and to provide class-wide equitable relief.

44.     Plaintiff's claims are typical of those raised by the class members Plaintiff seeks to represent including claims that:

>    a.   Defendants failed to turn over Plaintiff's and class members' Surplus Proceeds pursuant to the Michigan Supreme Court's decision in *Rafaeli* in violation of the Michigan and United States Constitutions;
>
>    b.   Defendants kept Plaintiff's and class members' Surplus Proceeds for the benefit of the Counties;
>
>    c.   The Surplus Proceeds earned interest or other pecuniary return for the benefit of the Counties;

d. Defendants retained any interest or other return earned on the Surplus Proceeds for the benefit of the Counties;

e. Defendants failed to put in place, have, or undertake a sufficient process to turnover Surplus Proceeds to Plaintiff and class members;

f. Defendant Counties were unjustly enriched by their illegal retention of Surplus Proceeds;

g. Defendants converted Surplus Proceeds when the Counties refused and/or failed to turnover Surplus Proceeds in light of *Rafaeli*;

h. Defendants converted Surplus Proceeds to the Counties' own use; and

i. A constructive trust has been created under which Defendants hold the Surplus Proceeds for the benefit of the Plaintiff and class members.

45. The foregoing violations of law and resulting harms alleged by the named Plaintiff are typical of the legal violations and harms suffered by all class members.

46. Plaintiff and class members have suffered the same injury.

47. There are clear questions of law and/or fact raised by named Plaintiff's claims common to those raised by the class Plaintiff seeks to represent including:

a. Whether the Michigan Supreme Court's decision in *Rafaeli* requires the immediate turnover of Plaintiff's and class members' Surplus Proceeds;

b. Whether Plaintiff and class members are entitled to immediate relief under the Michigan and United States Constitutions;

c. Whether Defendants committed an unconstitutional taking by retaining and refusing to turnover Surplus Proceeds from each Subject Property

10

d.   Whether Defendants have appropriated Plaintiff's and class members' property in the form of Surplus Proceeds without payment of just compensation in violation of Article X, § 2 of the Michigan Constitution and the Fifth Amendment of the United States Constitution.

e.   Whether Defendants committed an inverse condemnation of Plaintiff's and class members' property when the Counties retained and failed and/or refused to turn over Plaintiff's and class members Surplus Proceeds.

f.   Whether Defendants acted arbitrarily and capriciously and/or in a manner that shocks the conscience by retaining and failing to deliver Plaintiff's and class members' Surplus Proceeds even after the Michigan Supreme Court's decision in *Rafaeli*.

g.   Whether Defendant acted negligently or with wonton disregard as to the rights of Plaintiff and class members in retaining and failing to deliver Plaintiff's and class members' Surplus proceeds even after Michigan Supreme Court's decision in *Rafaeli*.

h.   Whether Defendants are liable for treble damages and attorney fees under MCL § 600.2919a due to Defendants' failure to turnover Plaintiff's and class members' Surplus Proceeds and convert those Surplus Proceeds to Defendants' own use.

i.   Whether Defendant Counties have been unjustly enriched by their retention of Plaintiff's and class members' Surplus Proceeds.

48.   The foregoing issues of fact and law predominate over any issues that require individualized proof.

49.     Defendants have acted and are continuing to act on grounds generally against the interest of Plaintiff and class members in the same manner.

50.     Plaintiff and class members share all allegations outlined in this complaint in common.

51.     Plaintiff, as class representative, will fairly and adequately protect the interest of the class members, will vigorously prosecute the suit on behalf of the class and will represent the class members with highly experienced counsel.

52.     The maintenance of this action as a class action will be superior to other available methods of adjudication and will promote the convenient administration of justice, preventing possible inconsistent or varying adjudications with respect to individual members of the class and/or Defendants.

**COUNT I**
**42 U.S.C. § 1983**
**TAKING – FIFTH AMENDMENT VIOLATION**
**(AGAINST ALL DEFENDANTS)**

53.     Plaintiff and class members incorporate the allegations contained in all proceeding paragraphs.

54.      The Fifth Amendment, made applicable to the States via the Fourteenth Amendment, is a constitutional provision and right requiring payment of just compensation upon a taking by Defendants.  *See Knick v Twp. of Scott*, 139 S. Ct. 2162 (2019).

55.     Plaintiff and class members have a vested property interest in the Surplus Proceeds generated from the tax foreclosure sale of the Subject Properties.

56.     Defendants have taken Plaintiff's and class members' Surplus Proceeds and appropriated this property for public use without payment of just compensation in violation of the Fifth Amendment of the United States Constitution.

12

57.     Defendants' refusal to take action to effectuate the return of Plaintiff's and class members' property despite *Rafaeli* deprives Plaintiff and class members of their constitutional right to just compensation in violation of the Fifth Amendment of the United States Constitution.

58.     To the extent that 2020 Public Act 256 ("PA 256") is found applicable to Plaintiff and class members' claims, PA 256 is an additional taking of Plaintiff's and class members' property in violation of the Fifth Amendment; PA 256 abrogates Plaintiff's and class members' right to obtain Surplus Proceeds.

59.     Plaintiff and class members are entitled to interest from the time of taking until payment as a part of just compensation in accordance with *Jacobs v U.S.*, 290 U.S. 13 (1933); *Knick v Twp. of Scott*, 139 S. Ct. 2162 (2019) and its progeny.

60.     Defendants' retention of any earnings or interest on Plaintiff's and class members' Surplus Proceeds in a continual, ongoing taking, that is causing continual harm.

61.     Defendants' taking of Plaintiff's and class members' Surplus Proceeds is actionable under 42 U.S.C. § 1983, and Plaintiff and class members are entitled to attorney fees pursuant to 42 U.S.C. § 1988.

62.     Plaintiff and class members have been injured by Defendants' unlawful of their Surplus Proceeds and have suffered damages.

## COUNT II
## CONSTRUCTIVE TRUST

63.     Plaintiff and class members incorporate the allegations contained in all preceding paragraphs.

64.     Defendants have failed and/or refused to turnover Plaintiff's and class members' Surplus Proceeds.

65.     Defendants acquired custody of Plaintiff's and class members' property under such circumstances that Defendants may not in good conscience retain the beneficial interest of Plaintiff's and class members' Surplus Proceeds.

66.     Defendants acquired custody of Plaintiff's and class members' property by way of unconstitutional provisions under the GPTA. Despite knowledge of the Michigan Supreme Court's decision in *Rafaeli*, Defendants continue to unlawfully hold Plaintiff's and class members' Surplus Proceeds.

67.     A constructive trust arises by operation of law. The Michigan Supreme Court in *Weir v Union Trust Co.*, 188 Mich. 452, 463; 154 N.W.2d 357 (1915) stated:

> Constructive trusts arise by operation of law. The following is found in 39 Cyc. p. 169:
>
> 'Constructive trusts do not arise by agreement or from intention, but by operation of law; and fraud, active or constructive, is their essential element. Actual fraud is not necessary, but such a trust will arise whenever the circumstances under which property was acquired make it inequitable that it should be retained by him who holds the legal title. Constructive trusts have been said to arise through the application of the doctrine of equitable estoppel, or under the broad doctrine that equity regards and treats as done what in good conscience ought to be done. Such trusts are also known as trusts *ex maleficio* or *ex delicto*, or involuntary trusts, and their forms and varieties are practically without limit, being raised by courts of equity whenever it becomes necessary to prevent a failure of justice.'

68.     A constructive trust exists when "property has been obtained through fraud, misrepresentation, concealment undue influence, duress, taking advantage of one's weaknesses or necessities, or any other similar circumstances which render is unconscionable for the holder of the legal title to retain and enjoy the property." *Kammer Asphalt Paving Co., Inc. v East China Twp. Sch.*, 443 Mich 176, 188; 504 N.W.2d 635 (1993).

69.     A court is permitted to impose a constructive trust when necessary to do equity and avoid unjust enrichment. *Id.* Thus, a constructive may be implemented to prevent the Counties' from being unjustly enriched by their unconscionable retention and enjoyment of Plaintiff and class members' Surplus Proceeds.

70.     Defendants' conduct in failing to turn over Plaintiff's and class members' Surplus Proceeds is *ex delicto*.

71.     *Rafaeli* recognized Defendants' affirmative obligation to return Plaintiff and class members' Surplus Proceeds: "Similarly, we hold that defendants were required to return the surplus proceeds and that defendants' failure to do so constitutes a government taking under the Michigan Constitution entitling [Plaintiff and class members] to just compensation." *Rafaeli*, 505 Mich. At 479.

72.     Despite knowledge of the Michigan Supreme Court's recognition of Defendants' constitutional obligation to return Surplus Proceeds to Plaintiff and class members, Defendants have refused and/or failed to do so.

73.     Defendants' conduct is a willful continuance of an unconstitutional and unjust practice.

74.     Defendants acquired possession of Plaintiff's and class members' Surplus Proceeds through duress and taking advantage of Plaintiff's and class members' weakness, necessities, or other circumstances.

75.     Upon information and belief, Defendants have enjoyed the use of Plaintiff and class members' Surplus Proceeds and/or derived interest income from the same; thus, Defendants have been unjustly enriched by their retention of Plaintiff's and class members' Surplus Proceeds.

76.     Defendants acquired and continue to hold Surplus Proceeds which are imbued with and Subject to a constructive trust for the benefit of Plaintiff and class members as a matter of law.

77.     It is inequitable and unconscionable for Defendants to retain Plaintiff and class members' Surplus Proceeds as well as any benefits Defendants have obtained from retaining Plaintiff's and class members' Surplus Proceeds.

78.     Plaintiff and class members are beneficiaries to contrastive trusts in their favor.

### COUNT III
### UNJUST ENRICHMENT

79.     Plaintiff and class members incorporate the allegations contained in all preceding paragraphs.

80.     Defendants have been unjustly enriched by the illegal taking of Plaintiff's and class members' Surplus Proceeds.

81.     Upon information and belief, Defendants have put Plaintiff's and class members' Surplus Proceeds to public use and/or generated interest income from those Surplus Proceeds.

82.     Defendants have been benefited by their retention of Plaintiff's and class members' Surplus Proceeds.

83.     The benefits Defendants have received from retaining Plaintiff's and class members' Surplus Proceeds are at Plaintiff's and class members' expense.

84.     Plaintiff and class members do not have an adequate and complete remedy at law except as asserted in this complaint.

85.     It is inequitable for Defendants to retain Plaintiff's and class members' property and any benefits Defendants have obtained from retaining Plaintiff's and class members' property.

**COUNT IV**
**42 U.S.C. § 1983**
**VIOLATION OF SUBSTATIVE DUE PROCESS UNDER THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION (AGAINST ALL DEFENDANTS)**

86.     Plaintiff and class members incorporate the allegations in all preceding paragraphs.

87.     The Fourteenth Amendment of the United States Constitution guarantees substantive due process.

88.     The Fourteenth Amendment is applicable to the State of Michigan.

89.     Defendants' retention of Plaintiff's and class members' Surplus Proceeds impinged on Plaintiff's and class members' vested property right to those Surplus Proceeds and deprived them of substantive due process.

90.     Defendants' conduct in seizing Plaintiff's and class members' Surplus Proceeds and refusal to return the same, despite knowledge of the Michigan Supreme Court's decision in *Rafaeli* amounts to arbitrary governmental action that shocks the conscience.

91.     Plaintiff and class members do not have an adequate remedy at law except as asserted in this complaint.

**COUNT V**
**42 U.S.C. § 1983**
**VIOLATION OF PROCEDURAL DUE PROCESS UNDER THE FOURTEENTH AMENDENT OF THE UNITED STATES CONSTITUTION (AGAINST ALL DEFENDANTS)**

92.     Plaintiff and class members incorporate the allegations in all preceding paragraphs.

93.     Plaintiff and class members are entitled to procedural due process under the Fourteenth Amendment of the United States Constitution.

94.     The Fourteenth Amendment is applicable to the State of Michigan.

95.     Plaintiff and class members have a constitutionally protected property interest in the Surplus Proceeds generated from the Subject Properties.

96.     Defendants' taking and retention of Plaintiff and class members' Surplus Proceeds without notice or the opportunity to object deprived Plaintiff and class members of procedural due process.

97.     Plaintiff and class members have been damaged as a direct and proximate result of Defendants' violation.

**COUNT VI**
**42 U.S.C. § 1983**
**VIOLATION OF THE EIGHTH AMENDMENT**
**(AGAINST ALL DEFENDANTS)**

98.     Plaintiff and class members incorporate the allegations contained in all preceding paragraphs.

99.     The count is pled to the extent that Defendants argue or assert that Plaintiff and class members were faced with an in-rem civil forfeiture pursuant to the GPTA.

100.     The Fourteenth Amendment makes the Eighth Amendment applicable to the individual states.

101.     By imposing and retaining an excessive fine in the form of the *in-rem* civil forfeiture of Plaintiff's and class members' equity interest in the Subject Properties in excess of the Tax Delinquencies, Plaintiff's and class members' Eighth Amendment rights have been violated.

102.     Defendants' retention of Plaintiff's and class members' Surplus Proceeds, which by definition is exclusive of the Tax Delinquencies, is punitive and not remedial.

103.     Defendants' conduct was reckless and undertaken with complete indifference to Plaintiff and class members' federal right to be free from violations of the Eighth Amendment.

18

104.    Plaintiff and class members have been injured by Defendants' unlawful retention of their Surplus Proceeds and have suffered damages.

**COUNT VII**
**INVERSE CONDEMNATION IN VIOLATION OF ARTICLE X, § 2 OF MICHIGAN'S CONSTITUTION (AGAINST COUNTY DEFENDANTS AND DEFENDANT TREASURERS IN THEIR OFFICIAL CAPACITIES)**

105.    Plaintiff and class members incorporate the allegation contained in all preceding paragraphs.

106.    *Rafaeli* announced that Plaintiff and class members have a vested property interest in Surplus Proceeds that is protected by Article X, § 2 of Michigan 1963 Constitution.

107.    Defendants' retention of Plaintiff and class members' Surplus Proceeds constitutes a taking under Article X, § 2 of Michigan's Constitution.

108.    To the extent that PA 256 is made applicable to Plaintiff's and class members' claims, it abrogates Plaintiff's and class members' right to obtain Surplus Proceeds and acts as an additional taking of Plaintiff's and class members' property in violation of Article X, § 2 of Michigan's Constitution.

109.    Defendants took Plaintiff's and class members' property without using any direct condemnation process before the taking, including those Defendants could have utilized as outlined under the Uniform Condemnation Procedures Act, MCL § 213.51, et seq.

110.    Defendants did not provide Plaintiff and class members any opportunity to claim the Surplus Proceeds from their respective Subject Properties.

111.    Defendants did not provide or have in place any process or procedure by which Plaintiff and class members could claim compensation for Defendants' seizure of Plaintiff's and class members' property interests.

112.    Defendants have not paid and continue to refuse to pay just compensation to Plaintiff and class members,

113.    Defendants do not intend to pay just compensation in the future to Plaintiff and class members.

114.    An inverse condemnation has occurred as to the Plaintiff and class members.

115.    Plaintiff and class members have been injured by Defendants' actions.

116.    Plaintiff and class members are entitled to maintain this action as an action for inverse condemnation. *See Electro-Tech Inc. v HF Campbell Co.*, 433 Mich. 54; 445 N.W.2d 61 (1989).

**COUNT VIII**
**VIOLATION OF SUBSTANTIVE DUE PROCESS UNDER ARTICLE I, § 17 OF THE MICHIGAN CONSTITUTION**
**(AGAINST ALL DEFENDANTS)**

117.    Plaintiff and class members incorporate the allegations contained in all preceding paragraphs.

118.    Pursuant to Article I, § 17 of the Michigan Constitution, Plaintiff and class members are entitled to substantive due process.

119.    Substantive due process "protects against the arbitrary exercise of governmental power . . ." *Bonner v City of Brighton*, 495 Mich. 209, 224; 848 N.W.2d 380 (2014).

120.    Defendants' taking of Plaintiff's and class members' Surplus Proceeds interfered with Plaintiff's and class members' vested property rights and deprived them of substantive due process.

121.    Defendants' conduct in seizing Plaintiff's and class members' Surplus Proceeds and refusal to return the same, despite knowledge of the Michigan Supreme Court's decision in *Rafaeli* is an arbitrary exercise of governmental power and shocks the conscience.

122.    Defendants' retention of Plaintiff's and class members' Surplus Proceeds is a deprivation of Plaintiff's and class members' property by an arbitrary exercise of power.

123.    Plaintiff and class members have been damaged as a direct and proximate result of Defendants' violations.

## COUNT IX
## VIOLATION OF PROCEDURAL DUE PROCESS UNDER ARTICLE I, § 17 OF THE MICHIGAN CONSTITUTION
## (AGAINST ALL DEFENDANTS)

124.    Plaintiff and class members incorporate the allegations contained in all preceding paragraphs.

125.    Plaintiff and class members have a constitutionally protected property interested in the Surplus Proceeds generated from the Subject Properties.

126.    Defendants provided no method or procedure for Plaintiff and class members to secure return of their Surplus Proceeds or obtain it from Defendants.

127.    Defendants' taking and retention of Plaintiff's and class members' Surplus Proceeds without notice or the opportunity to object or be heard deprived Plaintiff and class members of procedural due process.

128.    Plaintiff and class members have been damaged as a direct and proximate result of Defendants' violations.

## COUNT X
## CONVERSION
## (AGAINST ALL DEFENDANTS)

129.    Plaintiff and class members incorporate the allegations contained in all preceding paragraphs.

130.   Defendants' failure to turnover Plaintiff's and class members' Surplus Proceeds deprived Plaintiff and class members of their property and constitutes an act of conversion and theft.

131.   The Oakland County Treasurer took Plaintiff's property without Plaintiff's consent.

132.   Similarly, Defendants took class members' property without class members' consent.

133.   Defendants' continued control of Plaintiff's and class members' property constitutes conversion, embezzlement, or theft.

134.   Plaintiff and class members have been damaged as a direct and proximate result of Defendants' actions.

## COUNT XI
## STATUTORY CONVERSION
## (AGAINST ALL DEFENDANTS)

135.   Plaintiff and class members incorporate the allegations contained in all preceding paragraphs.

136.   On July 17, 2020, the Michigan Supreme Court issued its opinion in *Rafaeli* which alerted Defendants of their constitutional obligation to return Surplus Proceeds generated from the Subject Properties.

137.   The Oakland County Treasurer refused and/or failed to turn over Plaintiff's property.

138.   Defendants similarly refused and/or failed to turnover class members' property.

139.   Upon information and belief, Defendants converted Plaintiff's and class members' Surplus Proceeds to the Defendant Counties' own use, as contemplated by MCL § 600.2919a.

140.     Upon information and belief, Defendants deposited Plaintiff's and class members' Surplus Proceeds into the Counties' General Fund and/or Delinquent Tax Revolving Fund.

141.     Defendants' continued retention and control of Plaintiff's and class members' property and Defendants' conversion of Plaintiff's and class members' property to the Counties' own use constitutes statutory conversion under MCL § 600.2919a.

142.     As a result of Defendants' actions, Plaintiff and class members sustained damages.

143.     Michigan law provides that a person damaged as a result of a violation of that law "may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees." Plaintiff and class members are, therefore, entitled to treble damages. MCL § 600.2919a.

144.     Pursuant to MCL § 600.2919a, Plaintiff and class members are entitled to recover actual, reasonable attorney fees incurred in bringing and prosecuting this action.

## COUNT XII
## INJUNCTIVE RELIEF

145.     Plaintiff and class members incorporate the allegations contained in all preceding paragraphs.

146.     Defendants are in possession of Plaintiff's and class members' Surplus Proceeds in violation of the Michigan and United States Constitutions.

147.     Plaintiff and class members do not have an adequate remedy at law except as asserted in this complaint.

148.     Equity and good conscience require that this Court enter an order granting Plaintiff's and class members' request for injunctive relief enjoining Defendants from retaining the Surplus Proceeds and requiring Defendants to turn over the Surplus Proceeds from the Subject Properties to Plaintiff and class members.

## REQUESTED RELIEF

WHEREFORE, Plaintiff, on his own behalf and on behalf of those similarly situated, requests that this Court grant the following relief:

a.	Enter an Order certifying this case as a class action;

b.	Enter an Order declaring that Plaintiff will adequately represent that class and naming Plaintiff as the lead Plaintiff in this class action matter;

c.	Enter an Order declaring Defendants' retention of Plaintiff and class members' Surplus Proceeds as unconstitutional under the Michigan and United States Constitutions;

d.	Enter an Order declaring that Plaintiff's an class members' Surplus Proceeds are imbued with a constructive trust to remedy Defendants' unconscionable withholding of Plaintiff's and class members' property and requiring an accounting and turnover of all Surplus Proceeds and any income earned thereon over the relevant timeframe;

e.	Enter and Order finding Defendants liable under any or all counts contained herein;

f.	Enter an Order for any and all damages and/or compensation as is deemed proper;

g.	Enter an Order requiring Defendants to turn over to Plaintiff and class members the Surplus Proceeds plus interest from the date the Subject Properties were sold;

h.	Enter an Order disgorging any interest or money Defendants earned from retention of Surplus Proceeds;

i.	Enter an Order for an award of any and all damages available under federal and state law as applicable, including but not limited to, an award of nominal and punitive damages;

j.	Enter an Order for an award of treble the amount of Surplus Proceeds plus actual attorney fees for Defendants' violation of MCL § 600.2919a;

24

k.       Enter an Order for an award of attorney fees and expense pursuant to all other

applicable laws, rules, or statutes include 42 U.S.C. § 1988.

l.       Enter an order for interest from the date of Judgment until Defendants pay the

Judgment; and

m.       Enter an order for all other legal and/or equitable relief the Court deems proper.

**JURY DEMAND**

For all triable issues, a jury is hereby demanded.

Date: July 18, 2022                                        Respectfully submitted,

                                                            /s/ Donald R. Visser
                                                            Donald R. Visser (P27961)
                                                            Donovan J. Visser (P70847)
                                                            Brittany Dzuris (P81438)
                                                            Bria Adderley-Williams (P84876)
                                                            *Counsel for Plaintiffs*

                                                            VISSER AND ASSOCIATES, PLLC
                                                            2480 44th Street, Suite 150
                                                            Kentwood, MI
                                                            Tel: (616) 531-9860
                                                            Fax: (616) 531-9870
                                                            donv@visserlegal.com
                                                            donovan@visserlegal.com
                                                            brittany@visserlegal.com
                                                            bria@visserlegal.com